## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| MERCEDES PHERIGO, TIERRA HUNT, SHRINE WILLIAMS, and KIMBERLY WRIGHT, each individually and on behalf of all others similarly situated, | |
| Plaintiffs, | C.A. No. _____ |
| | FLSA Collective Action |
| v. | FED. R. CIV. P. 23 Class Action |
| SITEL OPERATING CORPORATION; SYKES ENTERPRISES, INCORPORATED; and ALPINE ACCESS, INC., | JURY TRIAL DEMANDED |
| Defendants. | |

## NATIONWIDE CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.     Like many other companies across the United States, Sitel Operating Corporation, Sykes Enterprises, Incorporated, and Alpine Access, Inc.'s (together, "Sitel Group") Kronos-based timekeeping and payroll systems were affected by a service outage beginning in December 2021.

2.     That outage led to problems in timekeeping and payroll throughout Sitel Group's organization for those employees using Sitel's Kronos system.

3.     As a result, Sitel Group's workers who were not exempt from overtime under federal law were not paid for all hours worked, including overtime, on time if at all for their work during and after the Kronos outage.

4.     Plaintiffs are each such Sitel Group workers.

5.     Sitel Group's failure to pay wages, including proper overtime, on time and in full for all hours worked violates the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*

6.      Plaintiffs worked for Sitel Group during the Kronos outage and were affected by these pay practices, like the other Sitel Group workers using Kronos.

7.      This action seeks to recover the unpaid wages and other damages Sitel Group owes Plaintiffs and other Sitel Group workers under the law, including unpaid wages, liquidated damages, penalties, interest, and other remedies provided by federal law.

**JURISDICTION & VENUE**

8.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9.      This Court has supplemental jurisdiction over Plaintiffs' state law claims because they are so related to the federal claims so as to form part of the same case or controversy.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Sitel Group resides in this District.

**PARTIES**

11.     **Plaintiff Mercedes Pherigo** is a natural person.

12.     Pherigo is and was, at all relevant times, an employee of Sitel Group.

13.     During the Kronos outage, Pherigo worked for Sitel Group.

14.     **Plaintiff Tierra Hunt** is a natural person.

15.     Hunt is and was, at all relevant times, an employee of Sitel Group.

16.     During the Kronos outage, Hunt worked for Sitel Group.

17.     **Plaintiff Shrine Williams** is a natural person.

18.     Williams is and was, at all relevant times, an employee of Sitel Group.

19.     During the Kronos outage, Williams worked for Sitel Group.

20.     During the Kronos outage, Williams worked for Sitel Group in Pennsylvania.

21.     **Plaintiff Kimberly Wright** is a natural person.

22.    Wright is and was, at all relevant times, an employee of Sitel Group.

23.    During the Kronos outage, Wright worked for Sitel Group.

24.    During the Kronos outage, Wright worked for Sitel Group in Arkansas.

25.    Plaintiffs represent a collective of similarly situated workers under the FLSA pursuant to 29 U.S.C. § 216(b). This "FLSA Collective" is defined as:

> **All current or former non-exempt employees of Sitel Group who worked in the United States at any time during payroll cycles affected by Sitel Group's Kronos service outage, beginning on or about December 11, 2021, until the time that Sitel Group regained full access to all Kronos products and services, <u>and</u> resumed normal employee timekeeping and payment operations.**

26.    Williams represents a class of similarly situated workers under Pennsylvania law pursuant to Federal Rule of Civil Procedure 23. This "Pennsylvania Class" is defined as:

> **All current or former non-exempt employees of Sitel Group who worked in Pennsylvania at any time during payroll cycles affected by Sitel Group's Kronos service outage, beginning on or about December 11, 2021, until the time that Sitel Group regained full access to all Kronos products and services, <u>and</u> resumed normal employee timekeeping and payment operations.**

27.    Hunt represents a class of similarly situated workers under Arkansas law pursuant to Federal Rule of Civil Procedure 23. This "Arkansas Class" is defined as:

> **All current or former non-exempt employees of Sitel Group who worked in Arkansas at any time during payroll cycles affected by Sitel Group's Kronos service outage, beginning on or about December 11, 2021, until the time that Sitel Group regained full access to all Kronos products and services, <u>and</u> resumed normal employee timekeeping and payment operations.**

28.    Throughout this Complaint, the FLSA Collective members, Pennsylvania Class Members, and Arkansas Class Members are referred to collectively as the "Similarly Situated Workers."

29.    **Defendant Sitel Operating Corporation** is a domestic corporation.

30.    Sitel Operating Corporation may be served by service upon its registered agent, **The Corporation Trust Company, 1209 Orange St., Wilmington, DE 19801**, or by any other method allowed by law.

31.    **Defendant Sykes Enterprises, Incorporated** is a domestic corporation.

32.    Sykes Enterprises, Incorporated may be served by service upon its registered agent, **The Corporation Trust Company, 1209 Orange St., Wilmington, DE 19801**, or by any other method allowed by law.

33.    **Defendant Alpine Access, Inc.** is a domestic corporation.

34.    Alpine Access, Inc. may be served by service upon its registered agent, **The Corporation Trust Company, 1209 Orange St., Wilmington, DE 19801**, or by any other method allowed by law.

35.    Sitel Group owns and operates various interrelated companies providing the same or similar customer engagement services to its customers.

36.    Sykes Enterprises, Incorporated and Alpine Access, Inc. are two such interrelated companies within Sitel Group's integrated enterprise.

37.    Sitel Group operates these entities as a single integrated employer under the FLSA. *E.g.*, *Jackson v. Art of Life, Inc.*, 836 F.Supp.2d 226, 237 (E.D. Pa. 2011).

38.    At all relevant times, the operation of all of Sitel Group's entities was interrelated.

39.    At all relevant times, Sitel Group had centralized/shared back office operations, including but not limited to human resources, accounting, marketing, risk management, financial operations and legal compliance.

40.    At all relevant times, Sitel Group exerted operational control over each of these entities.

41.    At all relevant times, Sitel Group had the authority to set pay practices at each of these entities.

42.    At all relevant times, Sitel Group substantially controlled the terms and conditions of employment for workers at each of these entities.

43.    At all relevant times, Sitel Group had a common and centralized control and management of labor relations regarding employees for each of these entities.

44.    At all times relevant, Sitel Group had common and shared management for these entities.

45.    All all times relevant, Sitel Group operated all of these entities for a common business purpose—namely, to provide for-profit call center services.

## COVERAGE UNDER THE FLSA

46.    At all relevant times, Sitel Group was an employer of Plaintiffs within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

47.    At all relevant times, Sitel Group was and is an employer of the FLSA Collective members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

48.    Sitel Group was and is part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

49.    During at least the last three years, Sitel Group has had gross annual sales in excess of $500,000.

50.    Sitel Group was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

51.    Sitel Group employs many workers, including Plaintiffs, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

52.     The goods and materials handled, sold, or otherwise worked on by Plaintiffs and other Sitel Group employees and that have been moved in interstate commerce include, but are not limited to, office and telecommunication equipment.

**FACTS**

53.     Sitel Group provides customer engagement services to other businesses. *See* Sitel Group, Our Mission, https://www.sitel.com/about/our-mission/ (last visited May 5, 2023).

54.     Sitel Group calls its customer engagement ineractions "customer experience (CX)." *See* Sitel Group, Our Mission, https://www.sitel.com/about/our-mission/ (last visited May 5, 2023).

55.     Sitel Group delivers 8 milliion customer experiences, or brand experiences, every day. *See* Sitel Group, Our Mission, https://www.sitel.com/about/our-mission/ (last visited May 5, 2023).

56.     To deliver these services, Sitel Group employs around, or more than, 160,000 employees. *See* Sitel Group, Our Mission, https://www.sitel.com/about/our-mission/ (last visited May 5, 2023).

57.     Many of Sitel Group's employees are non-exempt hourly and salaried workers.

58.     Since at least 2021, Sitel Group has used Kronos timekeeping software and services.

59.     On or about December 11, 2021, the Kronos system suffered a disruption in service due to a ransomware attack.

60.     The Kronos outage interfered with the ability of its customers, including Sitel Group, to use Kronos software and hardware to track hours and pay employees.

61.     For at least a portion of time following the Kronos outage, Sitel Group failed to accurately track the hours that Plaintiffs and Similarly Situated Workers worked.

62.     For at least a portion of time following the Kronos outage, Sitel Group failed to correctly pay Plaintiffs and Similarly Situated Workers for the hours that it did track, or for hours that were not tracked.

63.     Instead, Sitel Group has used various methods to estimate the number of hours Plaintiffs and Similarly Situated Workers work in each pay period.

64.     As a result of Sitel Group's failure to accurately track their actual hours worked each week, employees who were non-exempt and worked overtime were in many cases paid less than the hours they worked in the workweek, including overtime hours.

65.     As a result of Sitel Group's failure to accurately track the actual hours worked each week, employees who were non-exempt were in many cases paid less than the hours they worked in the workweek, including overtime hours.

66.     As a result of Sitel Group's failure to accurately pay non-exempt employees the hours that they reported each week, employees who were non-exempt were in many cases paid less than the hours they worked in the workweek, including overtime hours.

67.     Many employees were not paid for all their non-overtime wages for hours worked in certain workweeks.

68.     Plaintiffs are four of the many Sitel Group workers affected by these pay and timekeeping practices.

69.     Plaintiffs regulary worked over 40 hours per week for Sitel Group.

70.     Each of Plaintiffs worked 40 hours, or more, during one or more weeks of the Kronos outage beginning in December 2021.

71.    Plaintiffs were not paid the proper overtime premium for all hours worked on time, if at all, for each of these weeks since the onset of the Kronos service disruption, on or about December 11, 2021.

72.    Sitel Group failed to pay Plaintiffs for their actual hours worked and at their regular rates of pay, in multiple workweeks.

73.    In properly calculating and paying overtime to a non-exempt employee, the only metrics that are needed are: (1) the number of hours worked in a day or week, and (2) the employee's regular rate, taking into account shift differentials, non-discretionary bonuses, and other factors allowed under the law.

74.    Sitel Group knows it has to pay proper overtime premiums to non-exempt hourly and salaried employees.

75.    Sitel Group knows this because, prior to the Kronos outage, it routinely paid these workers for all overtime hours at the proper overtime rates for all hours they were credited for working.

76.    Sitel Group could have instituted any number of methods to accurately track and timely pay its employees for all hours worked.

77.    But Sitel Group did not accurately track time and fully and timely pay employees for the time they worked, including overtime hours, and at the regular rates at which they were supposed to be paid.

78.    It was feasible for Sitel Group to have its employees and managers report accurate hours so they could be paid the full and correct amounts of money they were owed for the work they did for the company.

79.    But Sitel Group failed to put a competent system in place to ensure that happened.

80.     In other words, Sitel Group pushed the effects of the Kronos outage onto the backs of its most economically vulnerable workers, rather than take steps to make sure its employees were paid on time and in full for the work they did.

81.     An employer cannot set up inefficient timekeeping and payroll systems and then claim it is not responsible for the timely payment of wages. *Cahill v. City of New Brunswick*, 99 F.Supp.2d 464, 475 (D.N.J. 2000).

82.     Yet, in the wake of the Kronos outage, that is exactly what Sitel Group did.

83.     Plaintiffs are just four of the many Sitel Group employees who had to shoulder the burden of Sitel Group's timekeeping and payroll policies and practices.

84.     Plaintiffs were non-exempt, hourly employees of Sitel Group.

85.     Plaintiffs' normal, pre-Kronos outage hours are reflected in Sitel Group's records.

86.     Plaintiffs regularly worked over 40 hours per week for Sitel Group during payroll cycles affected by the Kronos outage.

87.     In payroll cycles affected by the Kronos outage, Sitel Group failed to timely pay Plaintiffs and its other workers for their actual hours worked each week.

88.     In payroll cycles affected by the Kronos outage, Sitel Group failed to accurately record the hours worked by Plaintiffs and its other workers, in multiple workweeks.

89.     Sitel Group was aware of the overtime requirements of the FLSA.

90.     Sitel Group nonetheless failed to pay the full overtime premium owed to certain non-exempt hourly and salaried employees, such as Plaintiffs.

91.     Sitel Group's failure to pay overtime to these non-exempt workers constitutes a willful violation of the FLSA.

92.     The full overtime wages owed to Plaintiffs and the Similarly Situated Workers became "unpaid" when the work for Sitel Group was done—that is, on Plaintiffs' and the Similarly Situated Workers' regular paydays. *See*, *e.g.*, *Martin v. United States*, 117 Fed. Cl. 611, 618 (2014); *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993); *Cook v. United States*, 855 F.2d 848, 851 (Fed. Cir. 1988); *Olson v. Superior Pontiac–GMC, Inc.*, 765 F.2d 1570, 1579 (11th Cir.1985), *modified*, 776 F.2d 265 (11th Cir.1985); *Atlantic Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir.1944); *Birbalas v. Cuneo Printing Indus.*, 140 F.2d 826, 828 (7th Cir.1944).

93.     At the time Sitel Group failed to pay Plaintiffs and the Similarly Situated Workers in full for their overtime hours by their regular paydays, Sitel Group became liable for all prejudgment interest, liquidated damages, penalties, and any other damages owed under federal law.

94.     In other words, there is no distinction between late payment and nonpayment of wages under federal law. *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993).

95.     Any payment made by Sitel Group to Plaintiffs or the Similarly Situated Workers that Sitel Group may allege represents previously unpaid wages not supervised by the Department of Labor or any court.

96.     The untimely payment of wages owed under the FLSA does not, in itself, resolve a claim for unpaid wages under the law. *See*, *e.g.*, *Seminiano v. Xyris Enterp., Inc.*, 602 Fed.Appx. 682, 683 (9th Cir. 2015); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-54 (11th Cir. 1982).

97.     Nor does the untimely payment of wages, if any, compensate workers for the damages they incurred due to Sitel Group's acts and omissions resulting in the unpaid wages in the first place.

98. Plaintiffs and the Similarly Situtated Workers remain uncompensated for the wages and other damages owed by Sitel Group under federal and state law.

## COLLECTIVE ACTION ALLEGATIONS

99. Numerous individuals were victimized by Sitel Group's patterns, practices, and policies, which are in willful violation of the FLSA.

100. Based on her experiences and tenure with Sitel Group, Plaintiffs are aware that Sitel Group's illegal practices were imposed on the FLSA Collective.

101. The FLSA Collective members were not paid their full overtime premiums on time, if at all, for all overtime hours worked.

102. These employees are victims of Sitel Group's respective unlawful compensation practices and are similarly situated to Plaintiffs in terms of the pay provisions and employment practices at issue in the collective in this lawsuit.

103. The workers in the FLSA Collective were similarly situated within the meaning of the FLSA.

104. Any differences in job duties do not detract from the fact that these FLSA non-exempt workers were entitled to overtime pay.

105. Sitel Group's failure to pay overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies, and practices, which are not dependent on the personal circumstances of the FLSA Collective members.

106. The FLSA Collective should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS—PENNSYLVANIA LAW

107. The illegal practices Sitel Group imposed on Williams were likewise imposed on the Pennsylvania Class members.

108. Numerous other individuals who worked for Sitel Group were not properly compensated for all hours worked, as required by Pennsylvania law.

109. The Pennsylvania Class is so numerous that joinder of all members of the class is impracticable.

110. Sitel Group imposed uniform practices and policies on Williams and the Pennsylvania Class members regardless of any individualized factors.

111. Based on his experience and tenure with Sitel Group, as well as coverage of the Kronos hack, Williams is aware that Sitel Group's illegal practices were imposed on the Pennsylvania Class members.

112. Pennsylvania Class members were all not paid on time, if at all, for all of their wages, including overtime when they worked in excess of 40 hours per week.

113. Pennsylvania Class members were all not paid their contractually agreed wages.

114. Sitel Group's failure to pay wages and overtime compensation in accordance with Pennsylvania law results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Pennsylvania Class Members.

115. Sitel Group's failure to pay contractually agreed wages and overtime compensation results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Pennsylvania Class Members.

116. Williams's experiences are therefore typical of the experiences of the Pennsylvania Class members.

117. Williams has no interest contrary to, or in conflict with, the members of the Pennsylvania Class. Like each member of the proposed class, Williams has an interest in obtaining the unpaid wages and other damages owed under the law.

118.    A class action, such as this one, is superior to other available means for fair and efficient adjudication of the lawsuit.

119.    Absent this action, many Pennsylvania Class members likely will not obtain redress of their injuries and Sitel Group will reap the unjust benefits of violating Pennsylvania law.

120.    Furthermore, even if some of the Pennsylvania Class members could afford individual litigation against Sitel Group, it would be unduly burdensome to the judicial system.

121.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

122.    The questions of law and fact common to each of the Pennsylvania Class members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

      a.    Whether the Pennsylvania Class members were not paid overtime at 1.5 times their regular rate of pay for all hours worked in excess of 40 in a workweek;

      b.    Whether Sitel Group's failure to pay overtime at the rates required by law violated the PMWA;

      c.    Whether Sitel Group failed to pay Pennsylvania Class members their contractually agreed wages; and

      d.    Whether Sitel Group has any good faith defense to paying the contractually agreed wages.

123.    Williams's claims are typical of the Pennsylvania Class members. Williams and the Pennsylvania Class members have all sustained damages arising out of Sitel Group's illegal and uniform employment policies.

124.    Williams knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

125.    Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class or collective action treatment.

## CLASS ACTION ALLEGATIONS—ARKANSAS LAW

126.    The illegal practices Sitel Group imposed on Hunt were likewise imposed on the Arkansas Class members.

127.    Numerous other individuals who worked for Sitel Group were were not properly compensated for all hours worked, as required by Arkansas law.

128.    The Arkansas Class is so numerous that joinder of all members of the class is impracticable.

129.    Sitel Group imposed uniform practices and policies on Hunt and the Arkansas Class members regardless of any individualized factors.

130.    Based on her experience and tenure with Sitel Group, as well as coverage of the Kronos hack, Hunt is aware that Sitel Group's illegal practices were imposed on the Arkansas Class members.

131.    Arkansas Class members were all not paid proper overtime when they worked in excess of 40 hours per week.

132.    Sitel Group's failure to pay wages and overtime compensation in accordance with Arkansas law results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Arkansas Class members.

133.    Hunt's experiences are therefore typical of the experiences of the Arkansas Class members.

134.    Hunt has no interest contrary to, or in conflict with, the members of the Arkansas Class. Like each member of the proposed class, Hunt has an interest in obtaining the unpaid wages and other damages owed under the law.

135.    A class action, such as this one, is superior to other available means for fair and efficient adjudication of the lawsuit.

136.    Absent this action, many Arkansas Class members likely will not obtain redress of their injuries and Sitel Group will reap the unjust benefits of violating Arkansas law.

137.    Furthermore, even if some of the Arkansas Class members could afford individual litigation against Sitel Group, it would be unduly burdensome to the judicial system.

138.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

139.    The questions of law and fact common to each of the Arkansas Class members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

      a.    Whether the Arkansas Class members were paid overtime at 1.5 times their regular rate of pay for hours worked in excess of 40 in a workweek;

      b.    Whether Sitel Group's failure to pay overtime at the rates required by law violated Arkansas's wage and hour laws.

140.    Hunt's claims are typical of the Arkansas Class members. Hunt and the Arkansas Class members have all sustained damages arising out of Sitel Group's illegal and uniform employment policies.

141.    Hunt knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

142.    Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class or collective action treatment.

### FIRST CAUSE OF ACTION—VIOLATIONS OF THE FLSA AS TO PLAINTIFFS AND THE FLSA COLLECTIVE

143.    Plaintiffs incorporate each allegation set forth in paragraphs 1 through 142.

144.    By failing to pay Plaintiffs and the FLSA Collective members overtime at 1.5 times their regular rates, on time and in full, Sitel Group violated the FLSA. 29 U.S.C. § 207(a).

145.    Sitel Group owes Plaintiffs and the FLSA Collective members overtime for all hours worked in excess of 40 in a workweek, at a rate of at least 1.5 times their regular rates of pay.

146.    Sitel Group owes Plaintiffs and the FLSA Collective members the difference between the rate actually paid for overtime, if any, and the proper overtime rate.

147.    Likewise, Sitel Group owes Plaintiffs and the FLSA Collective members their agreed-upon rates of pay for all hours worked up to and including 40 each week in which they worked over 40 hours in the week, but were not paid in full for all hours. 29 C.F.R. § 778.315.

148.    Sitel Group knowingly, willfully, or in reckless disregard carried out this illegal pattern and practice of failing to pay Plaintiffs and the Collective members the compensation owed to them under the FLSA.

149.    Because Sitel Group knew, or showed reckless disregard for whether, its pay practices violated the FLSA, Sitel Group owes these wages for at least the past three years.

150.    Sitel Group's failure to pay compensation owed under the FLSA to Plaintiffs and the Collective members was neither reasonable, nor was the decision not to pay overtime made in good faith.

151. Because Sitel Group's decision not to pay overtime was not made in good faith, Sitel Group also owes Plaintiffs and the Collective members an amount equal to the unpaid wages as liquidated damages.

152. Accordingly, Plaintiffs and the FLSA Collective members are entitled to their unpaid wages under the FLSA, including their agreed-upon wages up to 40 hours each week they worked overtime and overtime wages in an amount equal to 1.5x their regular rates of pay, plus liquidated damages, attorney's fees, and costs.

### SECOND CAUSE OF ACTION—VIOLATIONS OF THE PMWA AS TO WILLIAMS AND THE PENNSYLVANIA CLASS

153. Williams incorporates each allegation set forth in paragraphs 1 through 142.

154. The conduct alleged in this Complaint violates the PMWA.

155. Sitel Group was and is an "employer" within the meaning of the PMWA.

156. At all relevant times, Sitel Group employed Williams and the other Pennsylvania Class members as "employees" within the meaning of the PMWA.

157. The PMWA requires an employer like Sitel Group to pay overtime to all non-exempt employees.

158. Williams and the other Pennsylvania Class Members are non-exempt employees who are entitled to be paid overtime for all overtime hours worked.

159. Within the applicable limitations period, Sitel Group had a policy and practice of failing to pay proper overtime to the Pennsylvania Class Members for their hours worked in excess of 40 hours per week.

160. As a result of Sitel Group's failure to pay proper overtime to Williams and the Pennsylvania Class Members for work performed in excess of 40 hours in a workweek, Sitel Group violated the PMWA.

161.    Williams and the Pennsylvania Class Members are entitled to overtime wages under the PMWA in an amount equal to 1.5 times their rates of pay, liquidated damages, attorney's fees, costs, penalties, and all other legal and equitable relief provided under the PMWA.

### THIRD CAUSE OF ACTION—VIOLATIONS OF THE WPCL AS TO WILLIAMS AND THE PENNSYLVANIA CLASS

162.    Williams incorporates each allegation set forth in paragraphs 1 through 142.

163.    The conduct alleged in this Complaint violates the WPCL.

164.    Sitel Group was and is an "employer" within the meaning of the WPCL.

165.    At all relevant times, Sitel Group employed Williams and the other Pennsylvania Class Members as "employees" within the meaning of the WPCL.

166.    The WPCL requires an employer like Sitel Group to pay wages to its employees on their regularly scheduled paydays.

167.    Williams and the Pennsylvania Class Members had oral or written contracts with Sitel Group.

168.    Whether the contractual agreements of Williams and the Pennsylvania Class Members were formal contracts, collective bargaining agreements, or oral, does not alter Sitel Group's obligations under the WPCL.

169.    Williams and the Pennsylvania Class Members' status as at-will employees or otherwise is irrelevant to whether they had an enforceable contract for wages with Sitel Group under the WPCL.

170.    Williams and the Pennsylvania Class Members had regularly scheduled paydays with Sitel Group.

171.    Sitel Group failed to pay Williams and the Pennsylvania Class Members their contractually agreed wages on their regularly scheduled payday.

172.    Sitel Group had no good faith basis for its failure to pay contractually agreed wages to Williams and the Pennsylvania Class Members.

173.    As a result of Sitel Group's failure to pay agreed wages to Williams and the Pennsylvania Class Members on their regularly scheduled paydays, Williams and the Pennsylvania Class Members are entitled to recover unpaid wages and fringe benefits. WPCL, 43 Pa. Stat. Ann. § 260.10.

174.    Because Sitel Group failed to pay wages to Williams and the Pennsylvania Class Members without any good faith basis, Williams and the Pennsylvania Class Members are entitled to recover liquidated damages as provided for by the WPCL. WPCL, 43 Pa. Stat. Ann. § 260.10.

175.    Williams and the Pennsylvania Class Members are also entitled to attorney's fees, costs, penalties, and all other legal and equitable relief provided under the WPCL. WPCL, 43 Pa. Stat. Ann. § 260.10.

### FOURTH CAUSE OF ACTION—VIOLATIONS OF THE AMWA
### AS TO HUNT AND THE ARKANSAS CLASS

176.    Hunt incorporates each allegation set forth in paragraphs 1 through 142.

177.    The conduct alleged in this Complaint violates the Minimum Wage Act of the State of Arkansas ("AMWA"), ARK. CODE ANN. § 11-4-201 *et seq.*

178.    At all relevant times, Sitel Group was and is an "employer" within the meaning of the AMWA. ARK. CODE ANN. § 11-4-203(4).

179.    At all relevant times, Sitel Group employed Hunt and all other Arkansas Class Members as "employees" within the meaning of the AMWA. ARK. CODE ANN. § 11-4-203(2)-(3).

180.    The AMWA requires an employer like Sitel Group to pay employees at a rate no less than the minimum wage for each hour worked. ARK. CODE ANN. § 11-4-120.

181.    As a result of Sitel Group' failure to pay Hunt and the Arkansas Class at a rate no less than the minimum wage for all hours worked, Sitel Group violated the AMWA.

182.    The AMWA requires an employer like Sitel Group to pay overtime to all non-exempt employees. ARK. CODE ANN. § 11-4-211.

183.    Hunt and the other Arkansas Class members are non-exempt employees who are entitled to be paid overtime for all overtime hours worked at a rate of no less than 1.5x their regular rate. ARK. CODE ANN. § 11-4-211(a).

184.    Within the applicable limitations period, Sitel Group had a policy and practice of failing to pay proper overtime to the Arkansas Class members for their hours worked in excess of 40 hours per week.

185.    As a result of Sitel Group' failure to pay proper overtime to Hunt and the Arkansas Class members for work performed in excess of 40 hours in a workweek, Sitel Group violated the AMWA.

186.    Likewise, Sitel Group owes Hunt and the Arkansas members their agreed-upon rates of pay for all hours worked up to and including 40 each week in which they worked over 40 hours in the week, but were not paid in full for all hours.

187.    The AMWA requires an employer like Sitel Group to make and keep accurate records of the name, address, and occupation of each employee, their rate of pay, and the amount paid to each employee. ARK. CODE ANN. § 11-4-217.

188.    Within the applicable limitations period, Sitel Group had a policy and practice of failing to provide their employees with the wage statements required by the AMWA.

189.    As a result of Sitel Group' failure to provide the wage statements required by the AMWA, Sitel Group violated the AMWA.

190.    Because Sitel Group willfully failed to pay Hunt and the Arkansas Class their earned wages and overtime compensation, Hunt and the Arkansas Class are entitled to recover liquidated damages.

191.    Hunt and the Arkansas Class members are entitled to recover their unpaid wages, liquidated damages, attorneys' fees, costs, penalties, and all other legal and equitable relief provided under the AMWA. ARK. CODE ANN. § 11-4-218(a).

### RELIEF SOUGHT

Plaintiffs pray for judgment against Sitel Group as follows:

    a.    For an order certifying a collective action for the FLSA claims;

    b.    For an order certifying a class action for the Pennsylvania law claims;

    c.    For an order certifying a class action for the Arkansas law claims;

    d.    For an order finding Sitel Group liable for violations of federal wage laws with respect to Plaintiffs and all FLSA Collective members covered by this case;

    e.    For a judgment awarding all unpaid wages, liquidated damages, and penalties under federal wage laws to Plaintiffs and all FLSA Collective members covered by this case;

    f.    For a judgment awarding all unpaid wages, liquidated damages, and penalties under Pennsylvnaia wage laws to Williams and all Arkansas Class members covered by this case;

    g.    For a judgment awarding all unpaid wages, liquidated damages, and penalties under Arkansas wage laws to Hunt and all Arkansas Class members covered by this case;

    h.    For a judgment awarding attorneys' fees to Plaintiffs and all FLSA Collective members covered by this case;

    i.    For a judgment awarding costs of this action to Plaintiffs all FLSA Collective members covered by this case;

    j.    For a judgment awarding pre- and post-judgment interest at the highest rates allowed by law to Plaintiffs and all FLSA Collective members covered by this case; and

k.      For all such other and further relief as may be necessary and appropriate.

                                    **JACOBS & CRUMPLAR, P.A.**

                                     /s/ Patrick C. Gallagher
                                    Patrick C. Gallagher, Esq. (DE 5170)
                                    750 Shipyard Drive, Suite 200
                                    Wilmington, DE  19801
                                    (t) (302) 656-5445
                                    (f) (302) 656-5875
                                    pat@jcdelaw.com
DATE:  May 11, 2023                 *Attorney for Plaintiffs*


**OF COUNSEL:**                     Andrew R. Frisch, Esq. (FL 027777)
                                    MORGAN & MORGAN, P.A.
                                    8151 Peters Road, Suite 4000
                                    Plantation, FL  33324
                                    (t) (954) WORKERS
                                    (f) (954) 327-3013
                                    AFrisch@forthepeople.com
                                    *Pro Hac Vice Application Forthcoming*

                                    Matthew S. Parmet, Esq. (TX 24069719)
                                    PARMET P.C.
                                    2 Greenway Plaza, Suite 250
                                    Houston, TX  77046
                                    (t) (713) 999-5228
                                    matt@parmet.law
                                    *Pro Hac Vice Application Forthcoming*